IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DRM, INC.,

                Plaintiff,                      OPINION AND ORDER

v.                                                  14-cv-754-wmc

BLM LAND, LLC,

                Defendant.

---

     Plaintiff DRM, Inc., owns and operates an Arby's franchise in a building leased by defendant BLM Land, LLC.  In this action, DRM asserts claims for declaratory judgment, breach of contract, breach of covenant of good faith and fair dealing, reformation and injunctive relief.  (Am. Compl. (dkt. #5).)  BLM then counterclaimed, asserting similar claims for declaratory judgment, breach of contract, tortious interference with a contract, and reformation or rescission.  (Countercl. (dkt. #13).)  Before the court is DRM's motion to dismiss and strike BLM's counterclaims on various grounds.  (Dkt. #18.)  The court will grant DRM's motion to dismiss BLM's first declaratory judgment claim, breach of contract claim, and tortious interference claim to the extent it is premised on the filing of the memoranda of understanding.  The court, however, will deny the motion with respect to all other counterclaims, including the claim for tortious interference based on the copying of BLM's bank on DRM's October 1, 2014.[1]

---

[1] The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  First, plaintiff DRM is an Iowa Corporation with its principal place of business located in Omaha, Nebraska.  (Am. Compl. (dkt. #5) ¶ 1.)  Second, all five members of defendant BLM Land, LLC, are citizens of Wisconsin.  (Countercl. (dkt. #13) ¶ 3.)  Third, the amount in controversy exceeds $75,000.  (Am. Compl. (dkt. #5) ¶ 53.)

ALLEGATIONS OF FACTS[2]

DRM owns and operates an Arby's franchise in Janesville, Wisconsin. BLM owes a commercial development in Janesville, Wisconsin, referred to as "The Oasis." Among other businesses in that development, BLM leases to DRM the premises in which its Arby's is located. Specifically, DRM and BLM entered into a Lease on or about September 12, 2011, that is now the subject of the parties' dispute.

Section 2 of the Lease, describing "Use of Premises," contains the following language:

> Lessor [BLM] shall prepare and deliver to Lessee [DRM] for Lessee's approval a recordable form of non-competition restrictive covenant in the form attached to this Lease as Exhibit "A" and incorporated herein by reference (the "Declaration of Restrictive Covenant"), covering all of Lot 2 CSM . . . prohibiting the sale, lease, or transfer of any kind of use of any part of said Lot 2 or by any concept that prepares and serves hot or cold sliced or chopped meats **or** deli-style or sub-style sandwiches including, but not limited to Subway,

---

[2] The court accepts as true all well-pled factual allegations in BLM's counterclaims, *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014), viewing them in the light most favorable to BLM, as the non-movant, *see Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Because BLM incorporates by reference DRM's allegations in its amended complaint, except as limited by BLM's answer (Countercl. (dkt. #13) ¶ 1), the court also considers DRM's complaint in setting forth the allegations of facts. In addition to these pleadings, the court considers three documents referenced in and central to BLM's counterclaims: (1) DRM's October 1, 2014, letter to BLM, copying Johnson Bank (Declaration of Christopher E. Nyenhuis ("Nyenhuis Decl."), Ex. A (dkt. #20-1); (2) Memorandum of Restrictive Covenant dated October 1, 2014 (*id.*, Ex. B (dkt. #20-2)); and (3) Amended Memorandum of Restrictive Covenant dated October 14, 2015 (*id.*, Ex. C (dkt. #20-3)). Finally, the court considers the Lease, which is attached to DRM's complaint. (Am. Compl., Ex. A (dkt. #5-1).) Attached to the Lease is Exhibit "A," the Declaration of Restrictive Covenant. (*Id.* at pp.15-16.) Both the Lease and the attached Declaration of Restrictive Covenant were referenced in and central to BLM's counterclaims.

> Panera Bread, Jimmy John's, Quiznos, Jason's Deli, and Paradise Bakery.

(Am. Compl., Ex. A (dkt. #5-1) p.2 (emphasis added).) The Declaration of Restrictive Covenant, attached as Exhibit "A" to the Lease, contains a similar provision but in place of the "or" emphasized in the Lease language quoted above, provides "in":

> For so long as DRM, its successors or assigns, is "continuously operating" (as defined below) an Arby's restaurant on the Arby's Tract, no property within or comprising the Developer Tract, or any part thereof shall be leased, sold, occupied, used or operated by any party as a concept that prepares and serves hot or cold sliced or chopped meats **in** deli-style of sub-style sandwiches, including b[ut] not limited to Subway, Panera Bread, Jimmy John's, Quiznos, Jason's Deli and Paradise Bakery.

(*Id.* at p.15 (emphasis added).)[3] This case in large part turns on whether the "or" or the "in" governs the restriction on BLM's use of Lot 2.

At some point after the execution of the Lease, BLM sold a portion of the land that is subject to the restrictive use to S&S Milton Avenue, LLC. DRM later learned that S&S intended to lease a portion of that property to establish a Chipotle franchise.

On October 1, 2014, DRM sent a certified letter to BLM's managing member, Terry McGuire, and copied Larry Squire, President of Johnson Bank on that letter. (Nyenhuis Decl., Ex. A (dkt. #20-1). The letter quoted the use restriction in Section 2 of the Lease itself, and then stated:

> We recently learned that Developer [BLM] has sold certain land covered by the use restriction to S&S Milton Avenue, LLC ("S&S") and that S&S is in negotiations to lease a part

---

[3] The Declaration of Restrictive Covenant was recorded with the Rock County Register of Deeds office on or about December 9, 2011.

> of this property for the operation of a Chipotle restaurant. The operation of a Chipotle restaurant would violate the use restriction contained in Section 1 of the Lease. We are writing to notify you that Developer's failure to notify S&S of the use restriction contained in Section [2] of the Lease constitutes a default under the Lease.

(*Id*. at p.2)[4] The letter also explains that Johnson Bank was being copied on the letter "[a]s required under Section 7 of the Disclaimer, Subordination and Non-Disturbance Agreement entered into as of December 8, 2011 by DRM and Johnson Bank ('Lender')." (*Id.* at p.3.)

Also on October 1, 2014, DRM filed a "Memorandum of Restrictive Covenant" with the Rock County Register of Deeds, which states that the language Section 2 of the Lease "differs" from that in the recorded Declaration of Restrictive Covenant and further provides in pertinent part:

> 1. DRM records this Memorandum solely for purposes of notifying all interested parties that DRM asserts that the correct interpretation of the Use Restriction is set forth in Section [2] of the Lease, prohibiting "the sale, lease or transfer of any kind of use of any part of said Lot 2 or by any concept that prepares and serves hot or cold sliced or chopped meats or deli-style or sub-style sandwiches including, but not limited to Subway, Panera Bread, Jimmy John's, Quiznos, Jason's Deli, and Paradise Bakery."
>
> 2. This memorandum is not intended to modify the Declaration, which can only be done with the prior written consent of DRM and the fee simple owners of all property encumbered by this Declaration, but is simply intended for the purpose of providing notice to all interested parties of the dispute described above.

---

[4] In the letter and in the two memoranda of understanding DRM mistakenly refers to Section 1 of the Lease, rather than Section 2. Since the Lease speaks for itself, there is no dispute that the use restriction is set forth in Section 2 of that document.

(Nyenhuis Decl., Ex. B (dkt. #20-2) p.3.)  On October 14, 2014, DRM filed an "Amended and Restated Memorandum of Restrictive Covenant," which only differs from the original memorandum in that the amendment contains the legal description of the tracts of land at issue.  (*Id.*, Ex. C (dkt. #20-3) p.4.)  After BLM filed its counterclaim, on February 6, 2015, DRM filed with the Rock County Register of Deeds a Withdrawal of Memorandum of Restrictive Covenant and a Withdrawal of Amended and Restated Memorandum of Restrict Covenant.  (*Id.*, Exs. D, E (dkt. ##20-4, 20-5).)

OPINION

In its motion, plaintiff seeks an order dismissing or striking each of defendant's counterclaims.  The court will consider the challenge to each counterclaim in turn.

I. **Breach of Contract and Declaratory Judgment Claims**

In its first counterclaim, BLM asserts that DRM's filing of the October 1, 2014, Memorandum and October 14, 2014, Amended Memorandum with the Register of Deeds constitutes a material breach of the parties' lease agreement.  In its second counterclaim, BLM similarly seeks a declaratory judgment that DRM's breach of the Lease entitled BLM to terminate it.  DRM seeks dismissal of both claims on the bases that (1) the filing of the memoranda did not violate any term of the Lease; and (2) even if a breach occurred, DRM cured the breach by withdrawing the memoranda within the 30-day right to cure period provided under the Lease.

With respect to the first basis for dismissal, defendant's opposition is limited to one paragraph, the heart of which is its contention that "DRM's documents changed and

enlarged the scope of the use restriction." (Def.'s Opp'n (dkt. #22) 7.) To state a claim for breach of contract, BLM must allege that DRM breached a term of the Lease. *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶ 10, 267 Wis. 2d 873, 672 N.W.2d 141. Here, BLM fails to direct the court to *any* provision of the Lease that DRM violated. More specifically, there is no express provision preventing DRM from filing the restrictive covenant at issue. Perhaps, as DRM surmises, BLM's contention is that DRM failed to perform a term or provision of the Lease (*see* Am. Compl., Ex. A (dkt. #5-1) § 17 at p.9), but the court is not obligated to posit a possible basis for suit, especially after a party has been given an opportunity to articulate the grounds for a claim and fails to do so. *See 330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." (internal citation and quotation marks omitted).)

Perhaps the closest provision is Section 2 of the Lease -- as quoted above -- which requires BLM to prepare and deliver to DRM a recordable form of the Declaration of Restrictive Covenant. Still, a fair reading of that provision does not prohibit DRM from filing notice of a restrictive covenant that explains the tension in the language in the Lease and the Declaration of Restrictive Covenant, stating its position as to that conflict and notifying interested parties of that position. Of note, DRM expressly stated in the original and restated memorandum that it is "not intended to modify the Declaration [of Restrictive Covenant]," but rather "is simply intended for the purpose of providing notice

to all interested parties of the dispute described above." (Nyenhuis Decl., Ex. B (dkt. #20-2) p.3; *id.*, Ex. C (dkt. #20-3) p.4.)

Even viewing the allegations in the light most favorable to BLM, the court finds that its counterclaim for breach of contract fails to allege that DRM violated a term of the Lease. Accordingly, the court will grant DRM's motion to dismiss BLM's breach of contract claim and declaratory judgment premised on that breach.[5]

**II. Tortious Interference**

BLM also asserts two counterclaims for tortious interference with a contractual or prospective contractual relationship. The first counterclaim concerns DRM's filing of the memoranda described above and alleges interference with unidentified contractual and prospective contractual relationships with "third parties." (Countercl. (dkt. #7) ¶¶ 46-52.) The second counterclaim concerns DRM's alleged interference with BLM's lender, Johnson Bank, based on the October 1, 2014, letter. (*Id.* at ¶¶ 53-59.)

Under Wisconsin law, the elements of a tortious interference with a contract claim are: "(1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI 128, ¶ 37 n.9, 297 Wis. 2d 606,

---

[5] Because the court finds that BLM has failed to state a claim for breach of contract, the court need not consider DRM's alternative ground for dismissal -- that it cured any breach by withdrawing the memoranda.

724 N.W.2d 879. "Tortious interference with a contract occurs when someone intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract." *Wausau Med. Ctr., S.C. v. Asplund*, 182 Wis. 2d 274, 297, 514 N.W.2d 34, 44 (Ct. App. 1994) (internal citations and quotations omitted) (citing Restatement (Second) of Torts § 766 at 7 (1979)).

DRM asserts three bases for dismissal of BLM's tortious interference claims: (1) "BLM has failed to identify or allege the existence of any contracts with 'third parties'"; (2) even if DRM interfered, it was privileged in doing so; and (3) "BLM's claim that it has sustained 'significant damages' as a result of the October 1, 2014 letter is wholly unsubstantiated." (Pl.'s Opening Br. (dkt. #19) 13.) The merits of DRM's arguments vary based on the two causes of action, since the one is premised on the memoranda and the other on the October 1 letter. Therefore, the court will consider each claim separately.

A. Memoranda of Restrictive Covenant

BLM alleges that DRM interfered with contractual and prospective contractual relationships with unidentified third parties in filing the two memoranda with the Rock County Registry of Deeds. While the lack of privilege is an element of a tortious interference claim, the burden of proving a lack of privilege is "generally not ascribed to the plaintiff." *Chrysler Corp. v. Lakeshore Commercial Fin. Corp.*, 389 F. Supp. 1216, 1221 (E.D. Wis. 1975). At the pleading stage, therefore, BLM must simply assert that the

"acts constituting intentional interference [were], in fact, not privileged." *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶ 38, 274 Wis. 2d 719, 658 N.W.2d 154. Because of this dynamic, dismissal pursuant to Rule 12(b)(6) is only proper if the counterclaim includes "facts that establish an impenetrable defense to the claims." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Here, DRM argues that BLM plead itself out of its tortious interference claim by premising the first tortious interference claim on truthful information in the memoranda.

Under Wisconsin law, "the transmission of truthful information is privileged, does not constitute improper interference with a contract, and cannot subject one to liability for tortious interference with a contract." *Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 13, 295 N.W.2d 16, 18 (Ct. App. 1980); *see also Mackenzie v. Miller Brewing Co.*, 2000 WI App 48, ¶ 70, 234 Wis. 2d 1, 608 N.W.2d 331 (finding communication was not improper in part because plaintiff failed to demonstrate the defendant "communicated anything that was false"); *Kaufmann v. Eppstein Uhen Architects, Inc.*, No. 13-cv-0674, 2015 WL 520616, at *5 (E.D. Wis. Feb. 9, 2015) (granting summary judgment where defendant failed to present evidence of a "material misrepresentation"). In this case, BLM simply alleges that "BLM and DRM had agreed on the terms of a document that would be recorded against the property. DRM violated that agreement by recording its Memorandum and Amended Memorandum against the property." (Def.'s Opp'n (dkt. #22) 10.) BLM also contends that "DRM chose to excerpt and communicated only its version" of the parties' restrictive use agreement. (*Id.* at 13.)

Ideally, DRM would have waited to file its notice of the dispute until after filing suit, and relied on the pleadings themselves, to create a cloud on title pursuant to a *lis pendens*, Wis. Stat. § 840.10, but the court agrees with DRM that the language in the memoranda could only be construed as truthful. Indeed, both memoranda simply (1) lay out the fact that there is a conflict between the Lease and the Declaration of Restrictive Use and (2) state DRM's opinion as to that conflict. On this basis, the court finds that the language in the memoranda itself dooms BLM's tortious interference claim to the extent based on DRM's filing of the memoranda. Therefore, the court will grant DRM's motion to dismiss this claim with prejudice.

### B. October 1, 2014, Letter

DRM also seeks dismissal of BLM's tortious interference claim premised on the October 1, 2014, letter to BLM, and effectively to Johnson Bank, who was copied on the letter. In its original brief, DRM acknowledges in a footnote that it would be premature for the court to dismiss this claim on the basis of privilege because the letter asserted that BLM breached the lease and issues of fact remain as to whether that assertion is truthful. (Pl.'s Opening Br. (dkt. #19) 16.) In its reply, however, DRM switches position and contends that the letter was privileged because DRM was contractually obligated to send the letter to DRM in light of Disclaimer, Subordination and Non-Disturbance Agreement entered into between DRM and Johnson Bank. (Pl.'s Reply (dkt. #24) 12-13.) The court will disregard this argument since it was raised for the first time in its reply. *Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments

10

cannot be made for the first time in reply."). Even if considered, an issue of fact would appear to remain as to the nature of DRM's obligations under this separate agreement with Johnson Bank -- whether DRM was simply obligated to alert Johnson to the parties' disagreement about the scope of the restrictive use or obligated to inform Johnson Bank of the reasons for that disagreement.

DRM asserts two other bases for dismissing this claim. First, BLM failed to adequately plead the identity of "third parties." While this argument may carry weight with respect to the tortious interference claim premised on the memoranda, BLM has adequately plead the identity of the third party with respect to this particular claim, or at least that party may be readily inferred -- BLM's bank, Johnson Bank. (*See* Countercl. (dkt. #13) ¶ 55 (referencing letter sent to BLM's lender); *id.* at ¶ 29 (mentioning inability to secure financing).) This pleading satisfies the requirements of Rule 8. *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (federal courts still operate "on a notice pleading standard; *Twombly* and its progeny do not change this").

Second, the court similarly rejects DRM's argument that BLM's claim of damages is "wholly unsubstantiated" as going beyond the requirements at the pleading stage. (Pl.'s Opening Br. (dkt. #19) 13.) While BLM will be required to demonstrate a causal connection between DRM's interference with its contractual relationship with Johnson Bank, including its damages, the court finds that BLM has sufficiently plead the elements of a tortious interference claim premised on DRM copying Johnson Bank on its October 1, 2014, letter to BLM.

### III. Motion to Strike

Finally, DRM seeks to strike BLM's claims for declaratory judgment and reformation or rescission of the contract on the basis that they are "redundant clutter." (Pl.'s Reply (dkt. #24) 14.) BLM is right to point out that courts, including this one, generally disfavors motions to strike, and DRM has wholly failed to demonstrate why this case warrants such measures. *See Hy Cite Corp. v. Regal Ware, Inc.*, No. 10–cv–168–wmc, 2011 WL 1206768, at *10 (W.D. Wis. Mar. 15, 2011) ("[S]triking a party's pleadings is an extreme measure and motions to strike are viewed with disfavor and infrequently granted."); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001) ("Fat in a complaint can be ignored." (internal quotations omitted)). While the relief sought by BLM's declaratory judgment claim appears to be nothing more than the flip-side of DRM's declaratory judgment claim, the remedy sought by the parties varies: DRM seeks reformation of the Declaration of Restrictive Covenant, which BLM seeks reformation or rescission of the Lease. Accordingly, the court will deny DRM's motion to strike the fifth and sixth counterclaims.

### ORDER

IT IS ORDERED that:

1) plaintiff DRM, Inc.'s motion to dismiss or strike defendant BLM Land, LLC's counterclaims (dkt. #18) is GRANTED as to defendant's first, second and third causes of action and DENIED in all other respects; and

2) in advance of the trial set to begin on May 11, 2015, the court will hold a telephonic conference on Tuesday, April 28, 2015, at 11:00 a.m. to review what issues remain for the jury to consider, plaintiff to initiate the call.

Entered this 23rd day of April, 2015.

                BY THE COURT:

                /s/

                _____
                WILLIAM M. CONLEY
                District Judge